# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DARRIN T. BRADLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-1360-STE |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision for further administrative development.

## I.     PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for disability insurance benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 149-165). The Appeals Council granted Plaintiff's request for review and remanded for further

administrative findings. (TR. 176-177). Following two more administrative hearings, the ALJ issued a second unfavorable decision. (TR. 19-35). The Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.   THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 1, 2012, the alleged disability onset date. (TR. 21). At step two, the ALJ determined Mr. Bradley had the following severe impairments:

> osteoarthritis primarily affecting the cervical and lumbar spine, as well as the right knee, wrist, and hand; shoulder tendonitis and bursitis; asthma and chronic bronchitis; status-post traumatic brain injury; PTSD; sleep apnea; major depressive disorder; and obesity.

(TR. 21). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 22).

At step four, the ALJ concluded that Mr. Bradley retained the residual functional capacity (RFC) to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) except the claimant is able to occasionally switch between sitting and standing at the work station without a loss of productivity; occasionally push/pull with the upper and lower extremities; occasionally climb ramps and stairs but never climb ladders, ropes or scaffolding; occasionally balance, stoop, kneel, and crouch but never crawl. He has no manipulative, visual, or communicative limitations, but must not work at unprotected heights, around dangerous moving equipment or machinery, or on uneven or unstable work surfaces. He must not work around dust, fumes, odors, extremes of temperature, or

other respiratory irritants. The claimant can understand, remember
comprehend, and carry out simple instructions and tasks; can work with co-
workers and supervisors on a superficial work basis; can adapt to routine
work changes in the work environment; but cannot work with the general
public on more than a superficial or ancillary basis.

(TR. 24). With this RFC, the ALJ concluded that Plaintiff was not capable of performing his past relevant work and proceeded to step five. (TR. 33).

At step five, the ALJ presented several limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 89). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT). (TR. 90). The ALJ adopted the testimony of the VE and concluded that Mr. Bradley was not disabled based on his ability to perform the identified jobs. (TR. 34-35).

### III. ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ erred: (1) by failing to include certain physical limitations in the RFC, (2) by failing to include certain mental limitations in the RFC, and (3) by failing to consider the effects of various impairments and Plaintiff's medications.

### IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. ERROR IN THE CONSIDERATION OF PHYSICAL LIMITATIONS

The RFC allowed for "no manipulative limitations," but Mr. Bradley contends that evidence exists which would "mandate at a minimum an occasional limitation on handling with his dominant right hand." (ECF No. 23:6). The Court agrees.

### A. Evidence Concerning Plaintiff's Ability to "Handle"

The record contains four opinions regarding Plaintiff's ability to "handle." Initially, and on reconsideration of Mr. Bradley's application for disability insurance benefits, two agency physicians concluded that Mr. Bradley had "some difficulty grasping firmly with [right] hand due to [osteoarthritis] and should avoid work situations with repetitive grasping." (TR. 128, 141); s*ee* Social Security Ruling 85–15, Titles II and XVI: Capability to Do Other Work—The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments at *7 (1985) (defining the DOT ability of "handling" as including "grasping").

In 2012 and 2015, consultative physician Dr. S.A. Chaudry examined Plaintiff and rendered two opinions. *See* TR. 859-866, 2075-2088. In the 2012 opinion, Dr. Chaudry noted that Plaintiff's right hand was "stiff," with painful range of motion in the first digit, and that x-rays revealed osteoarthritis in Plaintiff's right hand. (TR. 861). Dr. Chaudry also noted that Plaintiff was unable to effectively "grasp" objects in his right hand. (TR.

861, 865). In the February 2015 opinion, Dr. Chaudry opined that Plaintiff could only "occasionally" "handle" objects. (TR. 2077, 2020).

### B. Error in the ALJ's Evaluation of the Evidence

The RFC for "no manipulative limitations" indicates a rejection of the four opinions mentioned above. Error exists because: (1) the ALJ failed to explain his rejection of the agency opinions and Dr. Chaudry's 2012 opinion and (2) the ALJ's rejection of Dr. Chaudry's 2015 opinion lacked substantial evidence.

### The Agency Physicians' Opinions

The ALJ discussed the agency physicians' opinions, but gave them only "limited weight," noting only that "[t]hey concluded that the claimant would be able to perform light work." (TR. 30). The RFC for "light work" does not encompass manipulative limitations, such as handling, and the ALJ erred by omitting any discussion of the agency physicians' opinions regarding Plaintiff's ability to grasp. *See Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) ("We have repeatedly held that [a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."); *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects."); *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (noting that the ALJ's reasons stated in evaluating medical opinions must allow for meaningful appellate review).

## Dr. Chaudry's Opinions

Regarding the 2012 opinion, the ALJ noted "5 of 5 grip strength" and that x-rays revealed osteoarthritis of Mr. Bradley's right hand." (TR. 27). When evaluating the opinion, the ALJ apparently gave it no weight, as he stated that it "set forth no limitations." (TR. 31). Two problems exist with the ALJ's treatment of the 2012 opinion. First, the ALJ's statement that the opinion "set forth no limitations" was inaccurate, as Dr. Chaudry clearly stated that Mr. Bradley had no ability to "grasp" objects due to his osteoarthritis in his right hand which had been confirmed by x-rays. (TR. 865). Second, the ALJ omitted any discussion of Dr. Chaudry's opinion regarding Plaintiff's inability to "grasp" with his right hand. (TR. 27). As discussed, this type of omission constitutes legal error. *See supra*.

Regarding the 2015 opinion, the ALJ stated "the claimant continued to manifest 5 of 5 grip strength and manipulative ability." (TR. 28). Regarding specific limitations, the ALJ stated: "The physical examination showed no new restrictions or observations." (TR. 28). In discussing the opinion, the ALJ acknowledged that Dr. Chaudry had limited Mr. Bradley to "occasional" use of his hands, but the ALJ also stated that Dr. Chaudry had found that Plaintiff "would have no difficulty with . . . using his hands for things like sorting, handling or using papers/files." (TR. 31). Two problems exist with the ALJ's assessment of the 2015 opinion.

First, the statement suggesting an unlimited ability to "handle" was based on an inaccurate reading of Dr. Chaudry's actual opinion. During the 2015 examination, Dr. Chaudry noted that Plaintiff could "pick up a piece of paper, and tear it up with no

6

difficulty." (TR. 2077). The ALJ apparently translated this finding into a conclusion that Mr. Bradley could "sort[], handl[e], or us[e] paper files."

Second, this translation creates an internal inconsistency in the ALJ's opinion regarding his evaluation of Dr. Chaudry's opinion. While the ALJ acknowledged that Dr. Chaudry had limited Plaintiff to only "occasional" handling, the ALJ, in the same paragraph, stated that Dr. Chaudry's opinion supported a finding that Plaintiff would have an unlimited ability to handle. (TR. 31). The ALJ apparently adopted the latter finding, as the RFC specifically found "no manipulative limitations." (TR. 24). A problem exists, however, with the resulting RFC.

The RFC for "no manipulative limitations" is a clear rejection of Dr. Chaudry's opinion that Plaintiff could "occasionally" handle. But the ALJ erred in failing to explain this rejection. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (noting that the ALJ's reasons stated in evaluating medical opinions must allow for meaningful appellate review). Although the ALJ only accorded Dr. Chaudry's opinion "some weight," it is unclear from the opinion whether the lesser weight applied to Dr. Chaudry's findings regarding "occasional" "handling" or other findings which Dr. Chaudry had made. *See* TR. 31 (noting that "some weight" was given to Dr. Chaudry's opinions because Plaintiff's asthma is "fairly well-controlled" and Mr. Bradley has admitted to building a patio, doing yard work, and swimming). But even if the lesser weight meant that the ALJ was rejecting Dr. Chaudry's findings regarding the ability to only "occasionally" "handle," the only evidentiary support for the RFC for "no manipulative limitations" was the ALJ's misstatement of Dr. Chaudry's opinion regarding Plaintiff's abilities to "sort[], handl[e],

or us[e] paper files." This mischaracterization of the evidence, however, cannot provide support for the RFC. *See Talbot v. Heckler*, 814 F.2d 1456 (10th Cir. 1987) (the mischaracterization of the treating physician's opinion rendered the RFC lacking in substantial evidence).

The error is critical because the RFC for "no manipulative limitations" formed the basis for the ALJ's opinion at step five, that Mr. Bradley could perform three jobs which required "frequent"[1] "handling." *See* TR. 34-35, 90, DOT #7130687-018 (final assembler), DOT # 690.685-194 (grinding machine operator), 209.587-010 (addresser).

**Summary**

The agency physicians' opinions and Dr. Chaudry's opinions involve limitations on Plaintiff's ability to "handle." The ALJ apparently rejected these opinions, and was entitled to do so, but the ALJ gave no reason for rejecting the agency physician opinions or Dr. Chaudry's 2012 opinion and the ALJ's rejection of Dr. Chaudry's 2015 opinion was based on a mischaracterization of Dr. Chaudry's actual opinion. These errors warrant remand for reconsideration of these opinions.

**VI.    NO ERROR IN THE EVALUATION OF MENTAL LIMITATIONS**

Mr. Bradley contends that the ALJ's findings at step three regarding "moderate" mental limitations, as well as opinions from two agency psychologists were not properly incorporated in the RFC. The Court disagrees.

---

[1]   The *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* states that "constantly" involves an activity or condition that exists 2/3 or more of the time. (U.S. Dept. of Labor 1993) at C–3.

### A. Findings at Step Three

At step three, the ALJ concluded that Mr. Bradley suffered from "moderate" limitations in the areas of "social functioning" and "concentration, persistence, and pace." (TR. 22-23). Plaintiff argues that these findings should have been reflected in the RFC, and that "[s]ix circuits agree that impairments at steps 2 and 3 carry over to steps 4 and 5." (ECF No. 23:7). But the Tenth Circuit Court of Appeals does not adopt this viewpoint. Under this circuit's law, because the ALJ's findings were made at step three of sequential analysis, the ALJ had no duty to express them as particular findings in the RFC. *See Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) ("The ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment.").

### B. Opinions from Agency Psychologists

When assessing Plaintiff's mental residual functional capacity, two agency psychologists found that Plaintiff was "moderately" limited in his abilities to "remember and locations and work-like procedures" and "maintain concentration for extended periods." (TR. 129, 142, 143). The psychologists translated these findings into work-related limitations and provided the following narrative regarding Plaintiff's mental RFC: "Claimant can perform simple work under routine supervision. He can adapt to a work setting. He can relate superficially to coworkers and supervisors adequately for work purposes. He can handle incidental public contact." (TR. 130, 143). The ALJ noted the psychologists' opinions and stated that they were "well supported and given significant weight." (TR. 31). Indeed,

9

the ALJ appeared to adopt the opinions as they are reflected in the RFC. *Compare* TR. 23-24 (RFC) *with* TR. 130, 143 (agency psychologists' opinions).

Mr. Bradley contends that the agency psychologists' opinions were not reflected in the RFC which stated that Plaintiff could "understand, remember comprehend, and carry out simple instructions and tasks; [could] work with co-workers and supervisors on a superficial work basis; [could] adapt to routine work changes in the work environment; but [could not] work with the general public on more than a superficial or ancillary basis." (ECF No. 23:7-10). According to Plaintiff, the ALJ erred by failing to include limitations in the RFC related to the psychologists' opinions that Plaintiff was "moderately" limited in his abilities to "remember locations and work-like procedures" and that he had limitations in "concentration and persistence for extended periods." (ECF No. 23:7-10). This argument is without merit.

The Tenth Circuit Court of Appeals has clarified that the "moderate" findings in the "summary conclusion" portion of the MRFCA need not be included in the RFC assessment. In *Smith v. Colvin*, 821 F.3d 1264 (10th Cir. 2016), a consultative physician had completed a form similar to that which the agency psychologists completed in the instant case. In *Smith*, the physician rated the plaintiff's abilities in particular areas of function and opined that the plaintiff was "moderately limited" in her ability to:

- Maintain concentration, persistence, and pace,
- Remain attentive and keep concentration for extended periods,
- Work with others without getting distracted,
- Complete a normal workday and workweek without interruption for psychologically based symptoms,

- Perform at a consistent pace without excessive rest periods,

- Accept instructions and respond appropriately to criticism by supervisors,

- Get along with coworkers or peers without distractive them or engaging in behavioral extremes,

- Respond appropriately to changes in the workplace, and

- Set realistic goals or independently plan.

*Smith*, 821 F.3d at 1268. The form had explained that the questions, which had yielded these findings, "provided only an aid" to assess the plaintiff's RFC. *Id.* at 1268, n.1. The form further instructed the psychologist to assess the actual RFC in a narrative. *Id.* In the narrative, the psychologist stated that the plaintiff could: (1) engage in work that was limited in complexity and (2) manage social interactions that were not frequent or prolonged. *Id.* at 1268.

On appeal, the plaintiff questioned how the ALJ's RFC had incorporated all of the moderate limitations that the psychologist had listed. *Id.* at 1269, n.2. In response, the Court stated, "this is the wrong question." *Id.* According to the Court, "[The psychologist's] notations of moderate limitations served *only as an aid* to her assessment of residual functional capacity. We compare the administrative law judge's findings to [the psychologist's] opinion on residual functional capacity, *not* her notations of moderate limitations." *Id.* (emphasis added).

In rejecting the plaintiff's challenge, the Court cited *Lee v. Colvin*, 631 F. App'x. 538 (10th Cir. 2015). In *Lee*, the plaintiff asserted a similar challenge, arguing that the ALJ had not expressly incorporated specific moderate limitations into the RFC which had

11

been given by a psychologist which the ALJ had accorded "great weight." *Lee*, 631 F. App'x. at 541. The Court rejected the challenge, citing the Social Security Administration's Program Operations Manual Systems (POMS) which stated that "adjudicators are to use the . . . narrative as the RFC assessment" rather than the accompanying worksheet which rated the degree of limitation in particular areas. *Id.* In *Lee*, the ALJ had adopted the "narrative" section of the psychologist's RFC which accounted for the moderate limitations the psychologist had listed, even though the narrative was not a verbatim recitation of the rated limitations. *Id.* at 541-42.

In *Smith*, the Court adopted the approach taken in *Lee* and concluded:

> The administrative law judges in *Lee* and in our case did not repeat the moderate limitations assessed by the doctor. But both administrative law judges incorporated these limitations by stating how the claimant was limited in the ability to perform work-related activities.

*Smith*, 821 F.3d at 1269.

*Smith* is controlling in the instant case. Here, the agency psychologists had concluded that Plaintiff was "moderately" limited in his abilities to "remember locations and work-like procedures" and "maintain concentration for extended periods." (TR. 129, 142, 143). On that form, however, the psychologists were instructed to explain "in narrative form," the mental residual functional capacity. (TR. 130, 143). The explanations provided by the psychologists were reflected in the RFC. *Compare* TR. 24 (RFC) *with* TR. 130, 143) (agency psychologists' opinions). Under Tenth Circuit law, no error stems from the ALJ's failure to include the agency psychologists' particular "moderate" limitations, as those limitations were reflected in the narrative, which the ALJ adopted.

12

### C.      Summary

The ALJ had no duty to: (1) incorporate his step three findings in the RFC, or (2) incorporate the agency psychologists' statements that Plaintiff was "moderately" limited in his abilities to "remember locations and work-like procedures" and "maintain concentration for extended periods." Accordingly, the Court rejects Mr. Bradley's challenge involving mental limitations in the RFC.

### VII.    PTSD, TRAUMATIC BRAIN INJURY, DEPRESSIVE DISORDER, AND MEDICATIONS

Consultative physician Dr. Robert Danaher examined Plaintiff and diagnosed Mr. Bradley with Major Depressive Disorder and PTSD. (TR. 1791). Dr. Danaher also noted that by Plaintiff's medical history, he had suffered a traumatic brain injury. (TR. 1791). Dr. Danaher also stated that Plaintiff appeared "extremely fatigued," even falling asleep at one point during the examination. (TR. 1784). In his brief, Mr. Bradley cites Dr. Danaher's findings, as well as eight medications which Plaintiff takes to treat anxiety and pain. (ECF No. 10). Mr. Bradley then makes the following argument:

> The ALJ failed to determine they were severe impairments, but also failed to determine if they were non-severe impairments. The ALJ acknowledges Claimant has a traumatic brain injury as well as PTSD and major depressive disorder. However, he failed to include any limitations of slowed pace, or excessive side effects from medications in his hypothetical.

(ECF No. 23:10). Despite the lack of clarity in the argument, the Court assumes that Mr. Bradley believes that the RFC should have included limitations related to his PTSD, depression, brain, injury, and medications. The Court disagrees.

Regarding the PTSD, the depression, and the brain injury, the ALJ found these to be severe impairments at step two. (TR. 21). However, the presence of an impairment, albeit

severe, does not necessarily equate to corresponding limitations in the RFC. *Cavalier v. Colvin*, 2014 WL 7408430, at *2 (N.D. Okla. 2014). The RFC need only include such limitations as the medical record substantially supports. *See Kirkpatrick v. Colvin*, 663 F. App'x. 646, 650 (10th Cir. 2016) ("Clearly, an ALJ doesn't commit error by omitting limitations not supported by the record"). Here, Mr. Bradley does not cite to any evidence in the record where any medical professional has opined specific work-related limitations stemming from the PTSD, Depressive Disorder, or brain injury. Accordingly, the ALJ was under no duty to find specific limitations in the RFC. *See McNally v. Astrue*, 241 F. App'x 515, 518 (10th Cir. 2007) ("with regard to [her severe impairments], the claimant has shown no error by the ALJ because she does not identify any functional limitations that should have been included in the RFC assessment or discuss any evidence that would support the inclusion of any limitations") (citation omitted).

Next, Mr. Bradley implies that his medications had side effects which involved sleepiness or fatigue which should have been accounted for in the RFC. Plaintiff suggests that this proposition finds evidentiary support in Dr. Danaher's comments about Plaintiff being fatigued and falling asleep at the examination. But this argument is misplaced, as Dr. Danaher specifically stated "I do not know why [Mr. Bradley] was so tired or sleepy." (TR. 1791). Without evidentiary support regarding specific limitations regarding sleepiness resulting from his medications, the ALJ was under no duty to make specific allowances in the RFC, as discussed above. Even so, the Court reminds the ALJ that on remand, when assessing Plaintiff's credibility, any side effects of medications should be considered. *See*

*Wilson v. Astrue*, 602 F.3d 1136, 1144-45 (10th Cir. 2010); SSR 96-7p, 1996 WL 347186, at *1 (July 2, 1996).

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision for further administrative development.

ENTERED on November 28, 2017.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE